UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CRYSTAL WESTON<br>*Plaintiff,*<br><br>v.<br><br>LLOYD J. AUSTIN III, Secretary, United States Department of Defense<br>*Defendant.* | No. 1:23-cv-0952 (MSN/WEF) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint (ECF 35) and Motion for Partial Summary Judgment (ECF 36). Upon consideration of the pleadings and for the reasons set forth below, the Court will **GRANT** both motions.

**I.   BACKGROUND**

   **A.   Facts Regarding Treatment at Pentagon[1]**

Crystal Weston ("Plaintiff") is an African American veteran and Registered Nurse ("RN") who served Department of Defense ("DOD") personnel at the Pentagon. [ECF 29] (First Amended Complaint) ("Compl.") at 1. Plaintiff began her federal service with the DOD in June 2002, working as a nurse in the DiLorenzo Pentagon Healthcare Clinic ("the Pentagon clinic") serving senior Pentagon staff. *Id*. at ¶¶ 11, 13. In June 2011, Plaintiff was selected for the Executive Medicine Team ("EMT"), which serves the President of the United States, the Vice President, and many other senior Pentagon officials and other dignitaries. *Id.* at ¶¶ 14, 24, 25. She served on that team for more than ten (10) years and was the only Black nurse in the EMT. *Id.* at ¶¶ 20, 28.

---

[1] The Court assumes the truth of Plaintiff's factual allegations and draws all reasonable factual inferences in Plaintiff's favor for purposes of Defendant's Motion to Dismiss. *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002).

### 1. Claims against New Supervisors

In the Fall of 2018, after Donald Trump was elected, Major Jonathan Bailey ("Maj. Bailey") was appointed as the medical director of the EMT. *Id.* at ¶ 16. Maj. Bailey removed Plaintiff from the EMT "for no apparent reason" and assigned her to be a primary care nurse. *Id.* at ¶¶ 24, 31. When Plaintiff asked Maj. Bailey why she was removed, she was told that Maj. Bailey simply wanted to rotate someone else into the position. *Id.* at ¶ 25. But Plaintiff later overheard Maj. Bailey speaking to another doctor, Stephanie Rush ("Dr. Rush"), saying "that Plaintiff was the 'face' of [the] Executive Medicine [Team] and that he did not want a Black woman to be in that role, or words to that effect." *Id.* at ¶ 26. After serving in her primary care nurse role for five months, in January 2019 Plaintiff was made head nurse for the entire clinic ("Charge Nurse"). *Id.* at ¶¶ 34, 35.

In the fall of 2019, Major Yessenia Sinclair ("Maj. Sinclair"), a Hispanic female, joined the Pentagon clinic staff and began "actively and intentionally harassing, micromanaging and undermining Plaintiff." *Id.* at ¶¶ 37, 38. Maj. Sinclair made daily disparaging comments attacking how Plaintiff smelled and how her body looked (asking if she had breast implants or butt implants or wore wigs or extensions). *Id.* at ¶¶ 40, 41. Plaintiff interpreted such comments "as attacking her figure because she is curvy as an African American woman." *Id.* at ¶ 40. On one occasion Maj. Sinclair questioned Plaintiff's presence when treating a patient, "assum[ing] [the patient] was there to see Plaintiff in a personal capacity," because the patient was Black. *Id.* at ¶ 43. Plaintiff complained about Maj. Sinclair's hostile conduct in an email to her supervisors, Maj. Bailey and Major Emilia Escueta ("Maj. Escueta"), but her complaints were ignored. *Id.* at ¶¶ 45, 46. Plaintiff was then removed as Charge Nurse at some time in Fall of 2019, for what she claims was "no reason whatsoever." *Id.* at ¶ 47.

### 2. Telework Requests

In December 2019, Plaintiff fell inside the Pentagon building and injured her knee. *Id.* at ¶ 51. Maj. Sinclair, without examining Plaintiff or speaking with her medical provider, "took it upon herself to improperly diagnose and determine Plaintiff's infirmity from afar." *Id.* at ¶¶ 52, 53. Maj. Sinclair then refused to provide Ms. Weston the necessary documentation so she could request medical assistance from the Occupational Health Reference and Referrals office for employees. *Id.* at ¶¶ 55, 56. Plaintiff submitted a worker's compensation claim for her injury in January 2020, and, after DOD "actively oppose[d] her claim, she obtained the necessary formal opinion from the Department of Labor ("DOL"), who ultimately sided with Plaintiff." *Id.* at ¶¶ 57-59. After visiting an orthopedist, Plaintiff was given a knee immobilizer and crutches and further mobility restrictions, including that she stand for no more than two hours a day and walk no more than three hours a day. *Id.* at ¶ 61, 62. Due to her injury, Plaintiff was unable to work from about December 4, 2019, to February 18, 2020. *Id.* at ¶ 63.

Between February 11, 2020, and March 9, 2020, Plaintiff submitted four requests for reasonable accommodation for her injury. *Id.* at ¶¶ 64-76. She first requested a temporary change in duties so she could work from her computer and remain seated for most of the day. *Id.* at ¶¶ 64, 65. After this request was denied, Plaintiff submitted a second request, including documentation from her health care provider recommending that she work from home for at least 8-12 weeks while doing physical therapy. *Id.* at ¶ 67. Maj. Sinclair denied this request and insisted Plaintiff work in person. *Id.* at ¶ 71. Plaintiff asserts that she was treated disparately than her similarly situated non-African American colleague Yen Kim Nguyen who was given reasonable accommodation to work from home. *Id.* at ¶ 68-70. Plaintiff submitted yet another reasonable request for accommodation around February 18, 2020, which Maj. Sinclair partially

accommodated by removing Plaintiff from her Emergency Response Team ("ERT"). *Id.* at ¶ 73. After another appointment with her medical provider, who instructed Plaintiff to telework until April 30, 2020, Plaintiff submitted her fourth request for reasonable accommodation, which was again denied. *Id.* at ¶¶ 74-76. When Plaintiff continued her physical therapy appointments throughout March of 2020, Maj. Sinclair and Maj. Bailey categorized the time off as sick and/or annual leave instead of worker's compensation leave. *Id.* at ¶¶ 78, 79.

When COVID-19 struck around March 30, 2020, the department's registered nurses and other employees were sent home to work remotely. *Id.* at ¶ 81. Plaintiff was provided a laptop to telework on March 31, 2020, but two days later she was instructed to come back to work and return her laptop, "because [Maj. Sinclair and Maj. Bailey] believed she was carrying an insufficient workload." *Id.* at ¶¶ 82, 83.

### 3. Transfer and Removal

Around June 25, 2020, Plaintiff was issued a letter of leave restriction, which accused her of falsely abusing leave from January 2020 (despite providing medical notes and letters). *Id.* at ¶¶ 97, 98. Then, around December 8, 2020, Plaintiff was reassigned to a dental clinic within the Pentagon ("Dental Clinic"), where she was reassigned from Primary Care medicine to serve as a front desk clerk. *Id.* at ¶ 100. Plaintiff considered this "a functional[] demot[ion]," given that she "was relegated to executing only administrative duties, essentially paperwork." *Id.* at ¶¶ 101, 102. Plaintiff's patient care privileges were later removed around January 27, 2021 "because she was falsely accused of clinical deficiencies, lack of clinical competence and substandard care." *Id.* at ¶ 103.

In June 2021 the credentialing committee recommended a revocation of Privilege(s)/Practice, after reviewing Maj. Sinclair's recommendations, but never enforced it. *Id.*

at ¶ 108. Plaintiff was notified in October of 2021 that Valerie Bradley from the DOD HR Department was investigating her reasonable accommodation claim. *Id.* at ¶ 109. After Plaintiff's medical provider indicated she was experiencing clinically significant anxiety symptoms, she submitted a fifth request for reasonable accommodation, which she claims was ignored. *Id.* at ¶¶ 112-13.

At the beginning of 2022, Plaintiff was summoned for jury duty. *Id.* at ¶ 115. Although Plaintiff was ultimately not scheduled to sit, she remained summoned from January 14 – 28, 2022, and instead used that time to stay home from work on sick leave due to the stress she was enduring. *Id.* at ¶¶ 118, 121. Despite a note from her medical provider that she was excused from work during this time frame, Plaintiff received a Notice of Proposed removal around May 5, 2022 "for lack of candor and failure to adhere to established leave policies." *Id.* at ¶¶ 116, 120. Plaintiff was terminated soon thereafter. *Id.* at ¶¶ 123, 125.

### B.  Facts Regarding Exhaustion of Administrative Remedies[2]

Plaintiff alleges that she contacted the EEO office for the first time in November 2019, but there is no record of any such contact. ECF 53 at 2, n.2. The Defense Health Agency (DHA) staff searched DHA's centralized system of pre-complaint and complaint files and found an Information Inquiry submitted in September 2018 (predating Plaintiff's allegations), and a counselor's report from 2020. *Id.* There was no record of any November 2019 communications. *Id*.

The evidence shows that Plaintiff's first successful communication with the EEO occurred in June 2020. ECF 41, Exs. 3-6. This submission included Plaintiff's failure to accommodate and retaliation claims but did not mention her gender or race. *Id.* Plaintiff, however, never filed a formal

---

[2] Defendant moved for partial summary judgment on the ground that Plaintiff did not comply with the mandatory administrative exhaustion process for many of her claims. ECF 37. As such, the facts described herein reference the evidence submitted in this case.

complaint in 2020, despite being informed that she could do so within 15 days on or before August 5, 2020. ECF 53 at 2 n.2, 3.

Plaintiff then "contacted an EEO counselor on January 14, 2021, to complain about her reassignment to the Dental Clinic and the January 2021 suspension of her clinical practice." ECF 37 at 5. Plaintiff thereafter filed a formal complaint on April 13, 2021, asserting these same issues. *Id.* This is the *only* formal complaint Plaintiff ever filed. ECF 37 at 5 and ECF 37-2.

### C.  Procedural History

Plaintiff filed suit on August 11, 2022 (ECF 1), and thereafter amended her complaint on August 23, 2023 (ECF 29). After Defendant moved for partial summary judgment (ECF 36), Plaintiff sought a continuance under Federal Rule of Civil Procedure 56(d) so that she could seek additional discovery to properly respond to Defendant's motion. ECF 42. On January 26, 2024, Magistrate Judge William E. Fitzpatrick denied Plaintiff's motion but allowed Plaintiff to supplement the record by filing an amended Rule 56(d) declaration in support of her opposition to Defendant's Motion for Partial Summary Judgment. ECF 65. After unsuccessfully moving for reconsideration of this decision, Plaintiff filed her Fourth Declaration on March 11, 2024. ECF 78.

## II.  LEGAL STANDARD

### A.  Motion for Summary Judgment

Defendant moved for partial summary judgment on the exhaustion issue and cited several materials in support. The Court may grant summary judgment if the pleadings and submitted evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[3]

---

[3] Plaintiff challenges Defendant's motion for summary judgment as "premature" because "there has not been sufficient opportunity for discovery." ECF 41 at 28. But Plaintiff, despite filing four declarations, has failed to identify any information not within her possession that might counter Defendant's summary judgment arguments regarding the issue of exhaustion. *See* ECF 53 at 5; *see also* ECF 65 (Order denying Plaintiff's motion for discovery

6

### B. Motion to Dismiss

Defendant also moved to dismiss Plaintiff's exhausted claims under Fed. R. Civ. P. 12(b)(6). The Court may grant a motion to dismiss if a plaintiff fails to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face' in the sense that the complaint's factual allegations must allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *McCleary-Evans v. Maryland Department of Transportation*, 780 F.3d 582, 586-87 (4th Cir. 2015) (internal quotations omitted). In the context of a discrimination claim, a plaintiff must do more than "infer" discrimination. *Id.* at 588.

## III. ANALYSIS

### A. Exhaustion

This Court finds that there is no genuine dispute that Plaintiff failed to properly exhaust several alleged discrete acts (Counts I-IV, VII) and her failure to accommodate claim (Count VI). Accordingly, the Court grants Defendant's motion for partial summary judgment as to these claims. A plaintiff must exhaust the required administrative remedies before filing a lawsuit under Title VII. *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000). Individuals alleging discriminatory or retaliatory acts must contact their EEO office within 45 days of such acts. 29 C.F.R. § 1614.105(a)(1). After contacting their EEO office, an employee must then file a formal complaint with the agency within fifteen days of receiving notice to do so. 29 C.F.R. § 1614.106. If a plaintiff does not file a formal complaint within the fifteen-day period, they have failed to exhaust their claims. *See, e.g.*, *Noel v. Huston*, 2013 WL6147819, at *2-3 (D. Md. Nov. 21, 2013)

---

under 56(d)); ECF 67 (Transcript of Motions Proceeding Held on January 26, 2024 before Judge William Fitzpatrick) ("If information was told to Ms. Weston, if there were emails that were sent to Ms. Weston, if there were communications that were made to Ms. Weston, Ms. Weston has that and she knows."). Accordingly, with the materials cited by Defendant and Plaintiff's declarations, the Court is able to fully consider all relevant facts in deciding the summary judgment motion.

(dismissing claims for failure to exhaust where plaintiff filed a pre-complaint but failed to file a formal complaint).

Because Plaintiff only filed one formal complaint on April 13, 2021, she has failed to exhaust every claim not included in that formal complaint.[4] Plaintiff's April 13, 2021 complaint reiterated her claims from her January 2021 communications with the EEO: her reassignment to the Dental Clinic and the January 2021 suspension of her clinical practice." ECF 37 at 5. Accordingly, only those claims have been properly exhausted.

### 1. Events Before November 2019

Plaintiff claims she was discriminatorily removed from the EMT in the Fall of 2018. Compl. at ¶ 24. She therefore had 45 days following that to contact the EEO office about her discrimination. 29 C.F.R. § 1614.105(a)(1). Yet, Plaintiff did not contact an EEO officer in that time period. Even taking Plaintiff's allegation as true that she called the "wrong" EEO office in May 2019 and November 2019, *see* ECF 78 (Pl. Fourth Decl.) ¶¶ 5, 8, she failed to act within the requisite 45-day period following her Fall 2018 reassignment. Nor did she ever file a formal complaint alleging her EMT removal. Accordingly, there is no material dispute that Plaintiff failed to exhaust her claim concerning her reassignment from EMT to primary care.

### 2. November 2019 – November 2020

Between November 2019 and November 2020, Plaintiff failed to exhaust the following claims: her EMT reassignment (discussed above), denial of her four reasonable accommodation

---

[4] Plaintiff argues that she need not have timely exhausted discrete claims because she "alleges a hostile work environment, which is a continuing harm." ECF 41 at 13. Plaintiff therefore argues that she only had to file a timely EEO complaint relating "to at least one action in an ongoing and continuing scheme to push her out of her employment because of her race, gender and engagement in protected activity." *Id.* at 16. But "the continuing violation doctrine does not apply for discrimination based on . . . discrete acts." *Spida v. BAE Sys. Info. Solutions, Inc*, 2016 WL 7234088, at *5 (E.D. Va. Dec. 14, 2016). And Plaintiff has alleged discrete act discrimination claims, including her reassignment from the EMT, her termination, her letter of leave restriction, and her removal as charge nurse. ECF 53 at 6. To the extent Plaintiff alleges a hostile work environment not based on discrete acts, the Court will resolve those allegations in Section III.B.1 below.

8

requests, the letter of leave restriction, the charge-nurse reassignment, and any claims regarding comments made by Maj. Sinclair.

Plaintiff claims that following her EEO contact in November 2019, she was sent and completed an Information Inquiry Summary, but <u>neither</u> party has found any evidence of this document. ECF 79 at 3. There is evidence, however, that after corresponding with an EEO Specialist, Timothy Fahey, in May-June 2020, Plaintiff was assigned an EEO counselor, Sarah Gerhart. *See* ECF 78-2; ECF 79 at 4. Plaintiff was then notified of her right to file a formal EEO complaint on July 30, 2020, which she signed. ECF 78-10 at 3; ECF 79 at 4. This triggered the fifteen-day clock, making Plaintiff's formal complaint due on August 14, 2020. But Plaintiff failed to file a formal complaint by that day. On August 18, 2020, after the complaint was due, Plaintiff asked for an extension and was directed to Mr. Fahey. ECF 78-10 at 2. Plaintiff claims she asked Mr. Fahey for an extension and never heard back. *See* ECF 78 at ¶¶ 22, 23. Instead, Plaintiff began a new EEO process on December 23, 2020 via email. ECF 78-11 at 3-4 ("I would like to file an EEO complaint.").

Because there is no factual dispute that Plaintiff did <u>not</u> file a formal complaint within the required period, Plaintiff is precluded from proceeding with any claims based on events that occurred more than 45 days before December 23, 2020.[5]

---

[5] Plaintiff's charge-nurse reassignment is precluded for the additional reason that Plaintiff never raised this issue in her 2020 informal complaint. *See* ECF at 2. Furthermore, Plaintiff's claims regarding the negative comments from Maj. Sinclair are also precluded because she did not mention them in her formal 2021 complaint. *See* ECF 37-4.

Nor has Plaintiff identified any basis for equitable tolling. First, Plaintiff did not even argue for equitable tolling until her reply in support of her motion for discovery. ECF 54 at 4. Second, even if Plaintiff's equitable tolling argument was properly raised, the Court finds that Plaintiff has identified no basis for equitable relief excusing her failure to file a formal complaint in 2020. "Equitable tolling has long been considered an extraordinary remedy in this circuit, and litigants face a considerable burden to demonstrate that it applies." *CVLR Performance Horses, Inc. v. Wynne*, 792 F.3d 469, 476 (4th Cir. 2015). Plaintiff has pointed to the EEO Office's failure to respond to certain communications, but at most this is inaction, not the "showing of affirmative misconduct on the part of the government" required to establish equitable tolling. *See Lorenzo v. Rumsfeld*, 456 F. Supp. 2d 731, 738 (E.D. Va. 2006) (quotations and citations omitted).

### 3. Post December 2021

Plaintiff's final communication with the EEO office was in December 2021 when she requested to amend her complaint. ECF 37-4. Plaintiff contends that "she continued to contact the EEO office to assert additional discriminatory conduct . . . including [her] November 15, 2021 Notice of Suspension, January 2022 accommodation request due to stress, anxiety, depression and sleeplessness . . . , and May 5, 2022 Notice of Proposed Removal." *See* ECF 78 at ¶ 25. But there is no material dispute that Plaintiff never exhausted these claims because she never filed a formal complaint about them. Nor did Plaintiff exhaust her ultimate termination.[6]

**B.      Failure to State a Claim for Relief**

The Court finds that as to Plaintiff's exhausted discrete claims: her hostile work environment claim, her Title VII retaliation claim, and her retaliation claim under the Rehabilitation Act, she has failed to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). The Court will therefore grant Defendant's Motion to Dismiss.

### 1. Title VII Race and Sex Discrimination Claims (Counts I-IV)

As explained in Section III.A, *supra*, the only discrete employment actions that Plaintiff properly exhausted are her reassignment to the Dental Clinic and the suspension of her privileges in January 2021. Plaintiff also maintains a hostile work environment claim. But Plaintiff has failed to allege that these claims are cognizable under Title VII. To plausibly plead race or sex discrimination under Title VII, Plaintiff must allege "that there is (1) unwelcome conduct; (2) that is based on the plaintiff's . . . race [or sex]; (3) which is sufficiently severe or pervasive to alter the

---

[6] Plaintiff argues that she did not need to exhaust her termination claim because it "relates back" to her prior EEO activity. ECF 41 at 27. But the alleged grounds for termination are separate from the claims Plaintiff exhausted in her 2021 formal complaint. ECF 53 at 10. Because Plaintiff's discrimination claims arising out of her termination "exceed the scope of the EEO [complaint] and any charges that would naturally have arisen from an investigation thereof," they are "procedurally barred." *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) (citation omitted).

plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 271 (4th Cir. 2015) (citations and internal quotation marks omitted). But Plaintiff's hostile work environment allegations does not meet the severe or pervasive bar, and Plaintiff has failed to adequately plead racial or sex-based animus in connection with her exhausted employment actions.

### i. Severe / Pervasive

This Court finds that Plaintiff's hostile work environment claim fails to meet the high bar of "severe or pervasive conduct." "To meet Title VII's severe and pervasive prong, the Plaintiff's workplace must be 'permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Roberts v. Fairfax Cnty. Pub. Schs.*, 858 F. Supp. 2d 605, 609 (E.D. Va. 2012) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)). Because Plaintiff's hostile work environment claim cannot be based on discrete employment acts, Plaintiff is only left with the alleged offensive comments and criticism of her work. *See* ECF 53 at 13. Such comments and criticisms do not rise to the level of severe or pervasive harassment in this Circuit. *See Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x 217, 219 (4th Cir. 2013) (finding that a supervisor "mockingly" yelling, "repeatedly harp[ing]" and making "snide comments" at an employee "falls far short of being severe or pervasive enough to establish an abusive environment"); *Hill v. Panetta*, 2012 WL 12871178, at *9 (E.D. Va. Oct. 4, 2012) (finding criticisms of work performance and being subject to rude conduct "do[es] not rise to the level of severe or pervasive harassment necessary to state a hostile work environment claim") *aff'd sub nom. Hill v. Hagel*, 561 F. App'x 264 (4th Cir. 2014).

11

### ii. Racial or Sex-Based Animus

This Court also finds that Plaintiff has not adequately plead racial or sex-based animus in connection with her reassignment to the Dental Clinic and her January 2021 suspension of privileges. To adequately plead discriminatory animus, a plaintiff must allege "facts that make plausible that the alleged discrete acts of discrimination were adverse employment actions imposed as a result of her race or sex." *Barnhill v. Garland*, 636 F. Supp. 592, 601 (E.D. Va. 2022). Here, Plaintiff generally alleges that Defendant acted with "hostility toward Black women," Compl. at ¶ 141, but she has not adequately alleged that the decision to transfer her to the Dental Clinic or her 2021 suspension of privileges were expressly motivated by such bias.

Because Plaintiff has failed to state a Title VII claim as to her hostile work environment claim or her exhausted employment actions, the Court will grant Defendant's motion to dismiss as to these claims.

### 2. Title VII Retaliation Claim (Count V)

This Court finds that Plaintiff has also failed to plausibly plead retaliation under Title VII (Count V). To state a Title VII retaliation claim, a plaintiff must plausible allege "(1) engagement in a protected activity; (2) [an] adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). Plaintiff can only plead a retaliation claim based on actions predating her alleged protected activity, which occurred on January 14, 2021 (when she first contacted an EEO counselor to complain about her Dental Clinic Reassignment and clinical practice suspension). *See* ECF 37-1; *Keeshan v. Eau Claire Coop. Health Ctrs., Inc.*, 394 F. App'x 987, 995 (4th Cir. 2010) (finding no causal connection where adverse action predated plaintiff's EEO complaint). The only challenged actions that occurred after January 14, 2021 were (1) Plaintiff's revocation of

patient care privileges on January 27, 2021, (2) the credentialing committee's recommendation to revoke Patient's privileges in July 2021; and (3) Plaintiff's ultimate removal from federal service in 2022. Compl. at ¶¶ 103, 106, 108, 124. But the first two actions were "reinstated" and never implemented respectively. *Id.* Accordingly, they are not actionable. *See Hill v. Panetta*, 2012 WL 12871178, at *15 (E.D. Va. Oct. 4, 2012), *aff'd*, 561 F. App'x 264 (4th Cir. 2014) (finding "actions that were merely proposed or rescinded … not actionable"). The third challenged action is not cognizable because Plaintiff failed to exhaust her termination claim. ECF 37 at 21. Because Plaintiff has failed to plausibly plead retaliation under Title VII, the Court will grant Defendant's motion to dismiss as to this claim.

### 3. Rehabilitation Act Claims (Counts VI and VII)

As explained in Section III.A, *supra*, Plaintiff failed to exhaust her failure to accommodate claim (Count V) because she did not include this claim in the only formal complaint she filed. Accordingly, this Court turns to Plaintiff's second claim under the Rehabilitation Act, Plaintiff's Retaliation Claim (Count VII).

To state a claim for retaliation under the Rehabilitation Act, Plaintiff must show that (1) she "engaged in a protected activity," (2) "her employer acted in an adverse manner," and (3) "the protected activity was causally connected to the adverse action." *Vanyan v. Hagel*, 9 F. Supp. 3d 629, 641 (E.D. Va. 2014). But Plaintiff has failed to adequately plead a causal connection between her last protected activity under the Rehabilitation Act and her reassignment to the Dental Clinic (her only appropriately exhausted potential retaliatory act).[7] "There must … be some degree of temporal proximity to suggest a causal connection." *Constantine v. Rectors & Visitors of George*

---

[7] Plaintiff alleges that the following acts were retaliatory: (1) "changing her records to AWOL," (2) "reassigning her to improper detail," (the Dental Clinic reassignment), (3) "falsely accusing her of improper actions[] and not following the proper care standards," and (4) her removal from federal service. Compl. at ¶ 72. Yet the only retaliatory act that Plaintiff appropriately exhausted was the Dental Clinic reassignment. *See* Section III.A, *supra*.

13

*Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005); *see also Clark Cnty School Dist. v. Breeden.*, 532 U.S. 268, 273 (2001) ("[T]he temporal proximity must be 'very close.'"). Here there were six months between Plaintiff's email complaint for her knee accommodation (June 2020) and her Dental Clinic reassignment (December 2020). The Court finds that this "lengthy time lapse … negates any inference that a causal connection exists between the two." *Dowe v Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998); *Perry v. Kappos*, 489 Fed. App'x 637 (4th Cir. 2012) (finding "a three-month lapse too long to establish causation"). Accordingly, the Court grants Defendant's Motion to Dismiss as to this claim.

### IV.   CONCLUSION

This Court does not condone the alleged poor treatment of Plaintiff throughout her employment with the Defendant. But there is no genuine dispute that Plaintiff has failed to properly exhaust several alleged discrete acts and her failure to accommodate claim. Furthermore, Plaintiff has failed to state a claim for her only exhausted discrete claims (pertaining to her Dental Clinic reassignment and her January 2021 suspension of privileges), her hostile work environment claim, her Title VII retaliation claim, and her retaliation claim under the Rehabilitation Act.

Accordingly, it is

**ORDERED** that Defendant's Motion for Partial Summary Judgment (ECF 36) is **GRANTED** as to Plaintiff's unexhausted discrete act claims (Counts I-IV, VII), and her failure to accommodate claim (Count VI); and it is further

**ORDERED** that Defendant's Motion to Dismiss for Failure to State a Claim (ECF 35) is **GRANTED** as to Plaintiff's exhausted discrete claims and her hostile work environment claim (Counts I-IV, VII), her Title VII retaliation claim (Count V), and her retaliation claim under the Rehabilitation Act (Count VII); and it is further

**ORDERED** that all claims against Defendant in Plaintiff's Amended Complaint (ECF 29) are **DISMISSED**.

The Clerk is directed to close this civil action.

It is **SO ORDERED.**

/s/<br>Michael S. Nachmanoff<br>United States District Judge

September 27, 2024.
Alexandria, Virginia